**Pablo Paul SALAZAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 14–03–00202–CR to
14–03–00205–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 5, 2004.

Stanley G. Schneider, Houston, for appellants.

Donald W. Rogers, Jr., Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and SEYMORE.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Pablo Salazar, appeals from his conviction of four counts of aggravated sexual assault. Each of the four complainants were girls under fourteen years of age. A jury found appellant guilty and assessed punishment at eighteen years' confinement and a $1,000 fine in each case. In seven issues, appellant contends the trial court erred (1) in refusing to permit his expert witness to testify, (2) in permitting two of the State's witnesses to testify, and (3) in refusing to sever the cases. We affirm.

### Background

Appellant was accused of sexually molesting four girls who were his step-granddaughters. All of the allegations span a three month period, and all of the alleged assaults occurred at appellant's property when the girls were visiting. Each of the girls alleged similar conduct on the part of appellant, namely the touching or penetration of their genitals by appellant's fingers. On at least one occasion, two or more of the girls were present during an assault.

The trial court denied appellant's motion to sever and all four of the counts were tried together. During the guilt/innocence phase of the trial, appellant sought to introduce the testimony of Dr. Jerome Brown, a psychologist, regarding a particular method of evaluating interviewing techniques used on possible child victims of sexual abuse. The method called "content-based criteria analysis" focuses on whether the interviewer's questions were leading or suggestive and whether the child victim's memory of events could thereby have been altered. After a hearing, the trial court excluded the testimony. During the punishment phase of the trial, appellant requested that the court hold a hearing to determine the admissibility of expert testimony from Roger Mora, a counselor who had treated one of the complainants, and Dr. Renee Vandervennet, a counselor who had treated two of the other complainants. The trial court admitted their testimony as fact witnesses without

holding a hearing. Additionally, the court overruled appellant's hearsay objections regarding portions of Mora's and Vandervennet's testimony.

### Exclusion of Dr. Brown

■■■ In his first three issues, appellant contends that the trial court erred, and violated his constitutional rights to present a defense, by excluding testimony from his expert witness, Dr. Jerome Brown. We review the exclusion of evidence under an abuse of discretion standard and will not reverse the trial court's ruling so long as it is within the zone of reasonable disagreement. *See Sexton v. State,* 93 S.W.3d 96, 99 (Tex.Crim.App. 2002). Rule 702 of the Texas Rules of Evidence states "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Tex.R. Evid. 702. Under Rule 702, the proponent of scientific evidence must show, by clear and convincing proof, that the evidence is sufficiently reliable and relevant to assist the jury in understanding other evidence or in determining a fact issue. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000).

■■■ In the present case, both parties agree that Brown's proffered testimony concerned a so-called "soft science." The reliability of such testimony may be established by showing that (1) the field of expertise is a legitimate one, (2) the subject matter of the proposed testimony is within the scope of that field, and (3) the testimony properly relies upon the principles involved in the field. *Id.* Various factors have been used to aid in the reliability determination. *See, e.g., Nenno v. State,* 970 S.W.2d 549, 560–61 (Tex.Crim. App.1998). In *Nenno,* the court cautioned that there is no "rigid distinction" between the different possible types of expert testimony, e.g. "hard science," "soft science," or nonscientific. *Id.* Instead the inquiry must be a flexible one, drawing upon the various factors to fit the needs of each case. *See id.*

Brown's proposed testimony relied largely on a particular theory or technique, which he identified as "content-based criteria analysis." [1] In *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App.1992), the Court of Criminal Appeals listed certain factors for use in determining the validity of scientific theories and techniques, including: (1) acceptance by the relevant scientific community, (2) qualifications of the expert, (3) literature concerning the technique, (4) the potential rate of error of the technique, (5) the availability of other experts to test and evaluate the technique, (6) the clarity with which the underlying theory or technique can be explained to the court, and (7) the experience and skill of the person applying the technique. *Id.* at 573. We will use these factors as the general framework for our analysis of Brown's proposed testimony, although they will not necessarily all be applicable.

Brown's qualifications were not contested by the State. He identified himself as a psychologist specializing in, among other things, sex offender treatment. He further stated that about 15 percent of his practice was with sexual abuse victims and

---

1. Brown indicated that the entirety of his testimony would not be based on this technique, but it is clear from the record that the technique would have played a substantial roll in his testimony. There was no offer by defense counsel or Brown to limit his testimony so as to exclude reliance on the technique. Accordingly, we consider his use of the technique a vital element in assessing the reliability of his testimony.

that he had been called upon a number of times to evaluate sexual allegations made by children. He discussed in a very general way the existence of literature regarding how children's memories can be influenced or altered. He then specifically discussed the methodology that he liked to use, namely content-based criteria analysis. He acknowledged that it was a "proposed methodology" still being researched. He further admitted that a lot of the data on the methodology was conflictual but that he found it promising and worthy of further research. He also confirmed that the research on the methodology was not conducted using actual abuse victims and that the studies had not yet been duplicated to confirm the results. Therefore, based on Brown's own testimony, the trial court could have reasonably concluded that content-based criteria analysis was not generally accepted by the relevant scientific community, that study of the technique was still ongoing and far from complete, and that the potential for error in using the analysis was still great. Furthermore, the explanation of the methodology was very basic. For these reasons, the trial court could have reasonably determined that Brown's testimony was not sufficiently reliable and thus was inadmissible. *See Nenno*, 970 S.W.2d at 560–61.

▮▮▮ To be admissible, expert testimony must also be relevant. *See Jordan v. State*, 928 S.W.2d 550, 555 (Tex.Crim.App. 1996). To be relevant, expert testimony must make an effort to tie pertinent facts of the case to the scientific principles, which are the subjects of the testimony, so as to be helpful to the trier of fact. *Id.* In *Jordan*, the appellant offered an expert on eyewitness identification. The court of ap-

peals affirmed the trial court's exclusion of the evidence based on the expert's failure to testify regarding certain facts related to eyewitness reliability, including the length of time the appellant was viewed by the witnesses and lighting conditions at the time. *Id.* at 555–56. The Court of Criminal Appeals reversed, stating

> The question under Rule 702 is not whether there are some facts in the case that the expert failed to take into account, but whether the expert's testimony took into account enough of the pertinent facts to be of assistance to the trier of fact on a fact in issue.

*Id.* at 556.

In the present case, Brown exhibited no knowledge of the facts and did not attempt to relate or apply content-based criteria analysis to the particular facts. Brown did not offer an analysis of either the techniques used by the interviewers or the potential impact the techniques may have had on the children. Instead, Brown's testimony was explicitly offered solely as educational material for the jury to use in assessing the complainants' credibility. Accordingly, the testimony was not sufficiently tied to the facts of the case and thus was not relevant. *See id.* at 555.[2]

Brown's testimony was neither reliable nor relevant as those terms have been defined by the Court of Criminal Appeals. *See Nenno*, 970 S.W.2d at 560–61; *Jordan*, 928 S.W.2d at 555. Accordingly, we find the trial court's exclusion of the evidence was within the zone of reasonable disagreement. *See Sexton*, 93 S.W.3d at 99. Appellant's first issue is overruled. In his second and third issues, appellant argues the exclusion of Brown's testimony denied him his constitutional rights to present a

---

2. In his brief, appellant confuses the general with the specific. Although Brown's testimony was *generally* relevant to the credibility of child complainants in sexual assault cases, *Jordan* clearly requires the testimony be *specifically* tied to the facts of the case and not simply an academic discussion on a field of study. 928 S.W.2d at 555–56.

defense. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 1, 9. However, these issues are based solely on his claim that the trial court erred in excluding the evidence under Rule 702. Because we have held the court did not so err, we overrule these issues as well.

### Inclusion of Roger Mora & Dr. Vandervennet

■ In his fourth and fifth issues, appellant contends that the trial court erred in admitting the testimony of Roger Mora and Dr. Renee Vandervennet during the punishment phase of the trial. Mora and Vandervennet are both counselors who treated one or more of the complainants after the assaults occurred. During the punishment phase, appellant requested that the trial court hold a hearing regarding the admissibility of expert testimony from these two witnesses. The State responded by stating that Mora and Vandervennet were being called as fact witnesses and that only Dr. Jennifer Welch was being called as an expert in the punishment phase.[3] The trial court then declined to hold a hearing on the admissibility of their testimony.

■ Failure to hold a hearing regarding expert testimony is not error when no expert testimony is presented. The possibility that Mora and Vandervennet may have specialized knowledge that could qualify them to give expert testimony does not mean that every statement they make is as an expert. To the contrary, even someone with specialized knowledge in a particular field may testify as a lay witness to matters they have personally observed. *See Osbourn v. State*, 92 S.W.3d 531, 536 (Tex.Crim.App.2002).[4]

■ The vast majority of both Mora's and Vandervennet's brief testimony involved factual accounts of counseling sessions with certain of the complainants, including statements made by the complainants during these sessions. Generally speaking, the testimony was as the State had represented: a matter of facts and observations and not of expert opinions. At no point during Mora's testimony did defense counsel object that the witness was offering an expert opinion.

3. On appeal, appellant does not attack the admission of Welch's testimony.

4. As the Court of Criminal Appeals explained in *Osbourn*

When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony. A person with specialized knowledge may testify about his or her own observations under Rule 701 and may also testify about the theories, facts and data used in his or her area of expertise under Rule 702.... Thus, although police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed. [¶] A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences. However, as a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience or training. Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert. The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge. It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert.

92 S.W.3d at 536–37 (citations omitted).

Thus, to the extent that Mora may have offered an expert opinion during his testimony, any error in its admission was not preserved. *See* Tex.R.App. P. 33.1(a).

During Vandervennet's testimony, the following exchange occurred:

[Prosecutor:] And have you seen any improvement in those feelings and how she's expressed them during the course of your therapy?

[Vandervennet:] Slight improvement and—slight improvement in being scared. She's been—yeah. The improvements that I've noticed, she's been exceptional—

[Defense counsel:] I object. This is outside—she's expressing her opinion. She has to be qualified to testify as to that.

The Court: Overruled if the issue is what are the observations.

[Prosecutor:] Right.

The Court: Go ahead.

[Prosecutor:] What observations have you seen regarding improvement that [complainant] has made.

Vandervennet then answered the question at length. Defense counsel, apparently comfortable that the new phrasing of the question and the answer did not encompass expert testimony, did not renew his objection. Thus, to the extent that the testimony could have been considered an expert opinion, any error in its admission was not preserved. *See Williams v. State,* 840 S.W.2d 449, 461–62 (Tex.App.-Tyler 1991, pet. ref'd) (holding failure to renew objection when prosecutor asked substantially similar question waived any error); *see also Johnson v. State,* 975 S.W.2d 644, 653–54 (Tex.App.-El Paso 1998, pet. ref'd) (same); *Short v. State,* 681 S.W.2d 652, 655

(Tex.App.-Houston [14th Dist.] 1984, pet. ref'd) (same). Because we find the trial court did not err in refusing to hold a hearing as requested, and no complaints were preserved regarding any expert opinions that may have been subsequently rendered by Mora or Vandervennet, we overrule appellant's fourth and fifth issues.

██ In his sixth issue, appellant contends the court erred in admitting hearsay testimony from Mora and Vandervennet in violation of his constitutional rights to confrontation and cross-examination. *See* U.S. Const. amend. XIV. Both Mora and Vandervennet testified regarding statements made by complainants during the counseling sessions. The State also offered, and the court admitted, the two counselors' session notes. Defense counsel objected to the notes and the testimony as hearsay. *See* Tex.R. Evid. 802.

██ We find appellant's hearsay complaints to be without merit. The State argues that the objected-to statements are admissible under the exception in Rule 803(3) of the Texas Rules of Evidence. That section states:

> **Then Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Tex.R. Evid. 803(3).[5] Thus, hearsay testimony regarding the declarant's emotion or "mental feeling" is admissible so long as it does not include a statement of memory or

---

5. The declarant's availability is immaterial to application of this exception. *See* Tex.R. Evid. 803.

belief to prove the fact remembered or believed. *See Glover v. State*, 102 S.W.3d 754, 762–63 (Tex.App.-Texarkana 2002, pet. ref'd) (holding statements were not admissible under Rule 803(3) because they went beyond statements of declarant's emotional state to describe past acts). Mora testified that the complainant he treated told him that she couldn't believe the incident happened and that she was afraid, angry, and sad. Vandervennet testified that one of the complainants she treated stated that she was "very, very frightened," that she blamed herself, and that she was angry, sad, scared, and felt helpless and alone. Vandervennet further testified that the other complainant she treated expressed feeling sad, scared, embarrassed, and nervous. The complainant also stated that she was worried that they wouldn't win in court and that she was mad at her grandfather. Each of these statements concerns the declarant's then existing emotional condition or mental feeling. Thus, the hearsay testimony was admissible under Rule 803(3). *Cf. Martinez v. State*, 17 S.W.3d 677, 688 (Tex.Crim. App.2000) (holding declarant's statement she was afraid fit exception in 803(3)).[6]

■■■ Mora, however, also testified that the complainant he treated told him she had been experiencing nightmares. To the extent this hearsay testimony does

not fall under the mental condition exception, the trial court erred in admitting it. We must therefore conduct a harm analysis.[7] Because admission of hearsay evidence implicates a defendant's right to confront the witnesses against him, we must reverse the conviction unless we determine beyond a reasonable doubt that the error did not contribute to the jury's finding on punishment. *See* Tex.R.App. P. 44.2(a); *Simpson v. State*, 119 S.W.3d 262, 269 (Tex.Crim.App.2003). The statement at issue was extremely fleeting and occurred just once within a laundry list of other admissible statements concerning complainant's mental condition. In light of the evidence regarding appellant's guilt and the evidence properly admitted regarding the impact of the crime on the victims, we find beyond a reasonable doubt that the admission of the statement regarding nightmares did not contribute to the jury's finding on punishment. Accordingly, appellant's sixth issue is overruled.

### Severance

■■■ In his seventh issue, appellant contends that the court erred in refusing to sever the allegations of the four complainants for separate trials. Generally, a trial court may consolidate cases for trial when the charged offenses arise out of the

---

**6.** There are two mentions in the counselors' testimony that the girls were sexually abused. Defense counsel objected to the mention during Mora's testimony, the objection was sustained, and the court instructed the jury to disregard. The mention during Vandervennet's testimony was not objected to; thus, nothing was preserved for appellate review. Tex.R.App. P. 33.1(a).

**7.** The statement may have been admissible under the exception in Rule 803(4) for statements made for purposes of medical diagnosis or treatment. Texas courts, as well as others across the nation, have disagreed as to whether this exception should be restricted to statements to medical doctors or whether

statements to others, such as mental health counselors, should be included as well. *Compare Perez v. State*, 113 S.W.3d 819, 827–31 (Tex.App.-Austin 2003, pet. filed) (holding statements made to counselor were inadmissible), *with Puderbaugh v. State*, 31 S.W.3d 683, 685–86 (Tex.App.-Beaumont 2000, pet. ref'd) (holding statements to counselor were admissible). *See generally* Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 6:23 (15th ed.1998) (discussing cases from other jurisdictions). Because we find that the admission of such testimony in this case, even if error, was harmless, we need not wade into this debate.

same "criminal episode." *See* Tex. Pen. Code Ann. § 3.02 (Vernon 2003). A "criminal episode" is defined as

> the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
>
> (2) the offenses are the repeated commission of the same or similar offenses.

*Id.* § 3.01. However, a defendant generally has the right to demand that cases consolidated under section 3.02 be severed for trial. *See id.* § 3.04(a). This right is limited, in turn, by section 3.04(c), which states that "[t]he right to severance ... does not apply to offenses described by Section 3.03(b)(2) unless the court determines that the defendant or the State would be unfairly prejudiced by a joinder...." *Id.* § 3.04(c). Section 3.03(b)(2) states in relevant part:

> If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of:
>
> . . . .
>
> (2) an offense:
>
> (A) under Section 21.11, 22.011, 22.021, 25.02, or 43.25 committed against a victim younger than 17 years of age at the time of the commission of the of-

fense regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section. . . .

*Id.* § 3.03(b).

Specifically, appellant argues that the language of section 3.03(b)(2)(A) limits its application to offenses committed against a single victim, as opposed to the multiple victims, as in the present action.[8] Both parties agree that this issue is a matter of first impression. Indeed, we have found no other cases considering this exact argument. However, the language of the statute itself defeats the argument.

In construing a statute, we must give effect to the plain meaning of the text unless the text is ambiguous or the plain meaning would lead to absurd results. *Parfait v. State*, 120 S.W.3d 348, 349 (Tex. Crim.App.2003). Once again, section 3.03(b) provides "[i]f the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if *each* sentence is for a conviction of [an offense] under Section ... 22.021 ... against *a* victim younger than seventeen years of age...." Tex. Pen.Code Ann. § 3.03(b) (emphasis added).[9] Thus, the statute requires that "*each* sentence" be for an *offense* against "*a* victim younger than 17 years of age." There is no language in the section supporting appellant's preferred interpretation that *all* of the sentences must be for offenses against the same victim. To the contrary, so long as the victim of each of the offenses was

---

8. Although appellant did not make this exact argument in the trial court, he did move for severance on the basis that joinder of the cases was unfairly prejudicial because the cases did not arise out of the same transaction, and the cases involved different complainants. For purposes of our discussion, we assume without deciding that this objec-

tion was sufficient to preserve appellant's arguments.

9. Appellant was convicted on four counts of aggravated sexual assault under section 22.021. Tex. Pen.Code Ann. § 22.021. It is undisputed that the complainant in each case was under 17 years of age.

under 17, the requirements of the statute's plain language are clearly met. *Cf. Prudhomme v. State*, 47 S.W.3d 683, 691–92 (Tex.App.-Texarkana 2001, pet. ref'd) (interpreting section 3.03(b)(2)(A) as applying when the alleged offenses were against multiple complainants); *Hill v. State*, No. 12–01–00356–CR, 2003 WL 292316 (Tex. App.-Tyler February 12, 2003, no pet.) (not designated for publication) (same). This interpretation is bolstered by the fact that a criminal episode is defined in section 3.01 to potentially encompass offenses against more than one person. *See* TEX. PEN.CODE ANN. § 3.01. In sum, we find the fact that appellant was charged with crimes against more than one complainant did not render joinder of the cases improper.

 Appellant additionally argues that even if the statute permits joinder, it was unfairly prejudicial against him in this case. Specifically, he states that because the charged offenses involved multiple complainants, the State was permitted to introduce evidence that would not have been admissible in separate trials.

 We find this argument to be without merit. The test for whether a trial court properly ruled on a motion to sever, when that determination is left to the trial court by statute, is abuse of discretion. *Cf. Howard v. State*, 888 S.W.2d 166, 170–71 (Tex.App.-Waco 1994, pet. ref'd).[10] There is no presumption that the joinder of cases involving aggravated sexual assault against different children is unfairly prejudicial. *See Diaz v. State*, 125 S.W.3d 739, 742–43 (Tex.App.-Houston [1st Dist.] 2003, no pet. h.). Evidence of other

crimes is not admissible to prove the character of a person to show he acted in conformity therewith, but it may be admissible for other purposes. *See* TEX.R. EVID. 404(b).

 To be admissible, evidence must be relevant to some material issue in the case and not simply proof of character conformity. *Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App.2003). The ultimate test is whether the probative value of the evidence substantially outweighs its prejudicial effect. *Id.* In the present case, appellant's defense consisted primarily of (1) denying that the conduct occurred, (2) suggesting that the girls concocted the allegations to hide the fact that appellant caught two of them doing something (of a sexual nature) they should not have been doing, (3) claiming that the allegations were the result of suggestive questioning by investigators, and (4) presenting evidence of appellant's good character. It is well-established that evidence of other crimes may be admitted if it rebuts a defensive theory. *See, e.g., id.* at 627; *Wolfberg v. State*, 73 S.W.3d 441, 443 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd). Therefore, even if the cases had been tried separately, it is likely that in each case the testimony of the other victims would have been admissible to refute the defensive theories that the complainants concocted the story and that the allegations were the result of suggestive questioning. *See, e.g., Castoreno v. State*, 932 S.W.2d 597, 600 (Tex.App.-San Antonio 1996, pet. ref'd) (stating evidence of extraneous acts was admissible to rebut defensive theory that the defendant was being framed). Accord-

---

**10.** The court in *Howard* considered a motion for severance made under a section of the Texas Health & Safety Code, and it relied on our pronouncement, in *Harvey v. State*, 821 S.W.2d 389, 392 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd), that the appropriate standard of review for a trial court's decision in a matter left statutorily to the discretion of the trial court is abuse of discretion. *Howard*, 888 S.W.2d at 170–71. Penal Code section 3.04(c) assigns to the trial court the determination of whether unfair prejudice would result from joinder. *See* TEX. PEN.CODE ANN. § 3.04(c).

ingly, we find that the trial court could have reasonably found that joinder of the cases was not unfairly prejudicial against appellant; thus, the court did not abuse its discretion in trying the cases together. *See Moses,* 105 S.W.3d at 627; *Howard,* 888 S.W.2d at 170–71. Appellant's seventh issue is overruled.

The trial court's judgment is affirmed.